THE DISTRICT COURT OF GUAM

UNITED STATES OF AMERICA,
         Plaintiff,

vs.

KENNETH LEROY MCLAIN,
         Defendant.

CRIMINAL CASE NO. 11-00058-001

**REPORT & RECOMMENDATION CONCERNING VIOLATIONS OF SUPERVISED RELEASE CONDITIONS IN A FELONY CASE**

Pending before the court are a petition and supporting declaration (together, the "Violation Petition) filed on December 30, 2024, a Supplemental Declaration filed on September 15, 2025, a Second Supplemental Declaration filed on September 29, 2025, and a Third Supplemental Declaration filed on October 6, 2025. *See* ECF Nos. 376, 419, 423 and 425. Combined, these filings alleged that the Defendant violated his supervised release conditions as follows:

1. Tested positive for methamphetamine via drug testing sweat patches worn during the following periods: (i) October 23-24, 2024, (ii) November 8-13, 2024, (iii) July 28 - August 4, 2025, (iv) August 11-18, 2025, (v) September 8-15, 2025, and (vi) September 15-22, 2025; and tested positive for methamphetamine via urinalysis on September 12, 2025;

2. Admitted to the use of "meth" on November 17 & 24, 2024, December 4-5, 10, 24 and 29, 2024, and September 23, 2025; and

3. Tampered with sweat patches worn during the following periods: (i) July 7-11, 2025, and (ii) August 18-25, 2025.

On October 7, 2025, the Defendant entered admissions to the above-listed violations. *See* Mins., ECF No. 426. On October 16, 2025, the parties presented their respective arguments on an

appropriate sanction for the violations. *See* Mins., ECF No. 427. The court now issues this Report and Recommendation for the Chief Judge's consideration.

## BACKGROUND

**A.    Conviction and Sentence**

On April 8, 2013, the Defendant was sentenced to an imprisonment term of 108 months, with credit for time served, followed by five years of supervised release for the offense of Conspiracy to Distribute More than 50 Grams of Methamphetamine, a Class A felony. *See* Judgment, ECF No. 154. Among various conditions of supervised release imposed, the Defendant was ordered to refrain from the unlawful use of controlled substances and submit to urinalysis testing. *Id.* at 3-4.

On January 28, 2016, the Federal Public Defender filed a Joint Stipulation for Discretionary Relief Pursuant to 18 U.S.C. § 3582(c)(2).[1] *See* ECF No. 223. On March 18, 2016, the Chief Judge granted the request for a sentence reduction and reduced the Defendant's sentence to 87 months' imprisonment. *See* Order, ECF No. 226. All other provisions of the prior judgment remained in effect. *Id.*

The Defendant served his sentence and began his original term of supervised release on September 4, 2018.

**B.    Post-Conviction Conduct**

On August 21, 2019, the Probation Officer filed an Informational Report. *See* ECF No. 235. According to said report, the Defendant met with the probation officer on June 17, 2019, and stated that he relapsed and smoked methamphetamine the week prior. *Id.* He signed an admission form admitting to the use of "meth" and "alcohol." *Id.* Because this was the Defendant's first incident of drug use and because he was generally compliant with his conditions, the probation officer requested that no sanctions be imposed at that time, and the court agreed. *See* Order (Aug. 22, 2019), ECF No. 236.

On May 6, 2020, the Chief Judge revoked the Defendant's term of supervised release after

---

[1] The stipulation was based on Amendment 782 of the U.S. Sentencing Guidelines which reduced the offense levels across all drug types and made retroactive to a certain extent.

he admitted to allegations in a violation petition and supplemental declaration that he used methamphetamine six times, tested positive for the use of methamphetamine twice, and failed to report for drug testing on three occasions. *See* R. & R., ECF No. 263, and Revocation J., ECF No. 272. The Chief Judge sentenced him to time served (about one month and 18 days), followed by 58 months of supervised release. *Id.*

On May 20, 2021, the Defendant's supervised release term was revoked a second time. *See* Am. Revocation J., ECF No. 314. The Chief Judge sentenced the Defendant to 91 days' imprisonment, followed by 56 months of supervised release, based on his admission to drug use on three occasions, seven positive drug tests for methamphetamine use, failure to report for nine scheduled drug tests and two missed substance abuse counseling sessions. *Id.* at 1 and R. & R. at 2, ECF No. 303.

On April 27, 2023, the court revoked the Defendant's supervised release term for the third time and sentenced him to five months' imprisonment, followed by 49 months of supervised release. *See* Third Revocation J., ECF No. 341. The bases for the revocation was the Defendant's admissions to the use of methamphetamine, positive drug tests for methamphetamine, failure to appear for numerous drug tests, and failure to provide valid urine samples for drug tests. *Id.*

On May 16, 2024, the court revoked the Defendant's supervised release term for a fourth time and sentenced him to six months' imprisonment, with credit for time served, and 43 months of supervised release. *See* Fourth Revocation J., ECF No. 373. The revocation was based on Defendant admitting to the repeated use of "meth," testing positive for methamphetamine, his failure to appear for drug testing, and tampering with drug testing sweat patches. *Id.* at 1.

The Defendant's current term of supervised release commenced on October 4, 2024. Violation Pet. at 1, ECF No. 376.

**CURRENT VIOLATIONS**

A.  **Filing of Violation Petition**

On December 30, 2024, the probation officer filed the instant Violation Petition, *see* ECF No. 376, alleging the Defendant committed the violations discussed below.

///

| Date(s) | Allegation(s) |
|---|---|
| October 23-24, 2024 | Defendant wore a drug testing sweat patch. It was sent to the lab for analysis, and report received on December 7, 2024, returned a positive result for methamphetamine. |
| November 8-13, 2024 | Defendant wore a sweat patch, which was sent to the lab for analysis. Prior to removing the patch, Defendant signed an admission form that he used "meth" from November 12-13, 2024. Lab report received November 25, 2024, returned a positive result for methamphetamine. |
| November 18, 2024 | Defendant reported for drug testing and tested presumptive for methamphetamine on a urinalysis. He signed an admission form that he used "meth" on November 17, 2024. |
| November 24, 2024 | Defendant for a urinalysis test and was presumptive positive for methamphetamine use. He signed an admission form that he used "meth" on November 24, 2024. |
| November 25 and 27, 2024 | Defendant reported for drug testing on each day and tested presumptive positive for methamphetamine use. He signed admission forms asserting that the positive result was based on his drug use on November 24, 2024, as previously admitted. |
| December 6, 2024 | Defendant reported for urinalysis and was presumptive positive for methamphetamine use. He signed an admission form that he used "meth" from December 4-5, 2024. |
| December 11, 2024 | Defendant reported for urinalysis and was presumptive positive for methamphetamine use. He signed an admission form that he used "meth" the previous day (December 10, 2024). |
| December 24, 2024 | Defendant reported for urinalysis and was presumptive positive for methamphetamine use. He signed an admission form that he used "meth" that day. |
| December 26, 2024 | Defendant tested presumptive positive for methamphetamine use on a urinalysis test. He signed an admission form that the positive result was based on his admitted use of meth on December 24, 2024. |
| December 29, 2024 | Defendant reported for urinalysis and was presumptive positive for methamphetamine use. He signed an admission form that he used "meth" that day. |

At the request of the probation officer, the court ordered that a summons issue for the Defendant to appear and answer to the allegations. *See* Order, ECF No. 378.

**B.  DORE Program**

On January 10, 2025, the Defendant was accepted into the DORE program. *See* Mins., ECF No. 381. The court held the Violation Petition in abeyance while he was in the DORE program.

The probation officer described the Defendant' participation in the program as "marginal."

The Defendant received several jail sanctions while in the program for testing positive for methamphetamine or admitting to such use.[2]

On September 12, 2025, he was terminated from the DORE program. *See* Mins., ECF No. 418.

**C.    Filing of Supplemental Declaration**

On September 15, 2025, the probation officer filed a Supplemental Declaration, *see* ECF No. 419, alleging further violations by the Defendant that did not result in any DORE sanctions being imposed. These violations are as follows:

| Dates | Allegation(s) |
|---|---|
| July 7-11, 2025 | Defendant wore a drug testing sweat patch. During removal, Lighthouse Recovery Center ("LRC") staff took a picture of the patch, which appeared to have been tampered with. The patch was not removed by LRC staff.<br><br>Defendant met with the probation officer on July 14, 2025. He claimed that Probation Officer Melinda Santos was aware that prior patches he wore would bubble and peel from Defendant sweating at work. The probation officer stated that many other patches he wore in the past did not have these issues. |

---

[2] The Defendant received 34 days of sanctions as follows:

- March 14-18, 2025 sanction (five days) - for testing positive on sweat patch worn February 15-18, 2025; failing to report for drug testing on March 5, 2025; admitting to "meth" use on March 7 and 12, 2025; failing to report to counseling sessions on March 11 & 13, 2025;
- March 28 - April 1, 2025 (five days) - for admitting to the use of meth" on March 26-27, 2025;
- April 18-25, 2025 (eight days) - for admitting to "meth" use on April 17, 2025;
- May 16-21, 2025 (six days) - for admitting to "meth" use on May 5 and 15, 2025;
- June 27-29, 2025 (three days) - for admitting to "meth" use on June 27, 2025; and
- August 29 - September 4, 2025 (seven days) - for admitting to "meth" use on July 12 & 15, 2025.

| Date(s) | Allegation(s) |
|---|---|
| July 28 - August 4, 2025 | Defendant wore a sweat patch, which was sent to the lab for analysis. The lab report received on August 18, 2025, returned a positive result for methamphetamine.<br><br>Defendant met with the probation officer on August 20, 2025. When confronted with the results, Defendant denied any drug use and questioned how he would be positive if he was at the LRC Withdrawal Management Program since July 17, 2025, and never left the program except with LRC staff to attend court hearings. |
| August 11-18, 2025 | Defendant wore a drug testing sweat patch which was sent to the lab for analysis. Lab report received on September 2, 2025, returned a positive result for methamphetamine. |
| August 18-25, 2025 | A sweat patch was applied on Defendant, but when he came for its removal, LRC staff took a picture of the patch and refused to remove it since it appeared to have been tampered with. |

**D.    Initial Appearance**

On September 16, 2025, the Defendant appeared in court as summoned. *See* Mins., ECF No. 420. The court appointed the Federal Public Defender to represent the Defendant. *See* Appointment Order, ECF No. 421. The probation officer orally amended the Supplemental Declaration at the top of page 3 to reflect that the DORE sanction was imposed for admitted "meth" use on June 27, 2025, not May 5 and 15, 2025, as therein indicated. The probation officer stated that correction does not affect the current alleged violations. Ms. Lujan requested a two-week continuance to allow Mrs. Breazeale, his assigned counsel, to speak with him. Without objection, the matter was continued to September 30, 2025. The Defendant was allowed to remain released.

**E.    Filing of Second Supplemental Declaration**

On September 29, 2025, the probation officer filed a Second Supplemental Declaration, *see* ECF No. 423, alleging further violations as noted below.

| Date(s) | Allegation(s) |
|---|---|
| September 8-15, 2025 | Defendant wore a drug testing sweat patch, which was sent to the lab for analysis. The lab report received on September 26, 2025, returned a positive result for methamphetamine. |
| September 12, 2025 | Defendant submitted to a urinalysis test at the probation office. The result was presumptive positive for methamphetamine use. Defendant denied illegal drug use, so the urine sample was sent to the lab for analysis. Results received on September 26, 2025, confirmed it was positive for methamphetamine. |
| September 24, 2025 | Defendant reported to the probation office and submitted to a drug test, which was presumptive positive for methamphetamine use. Defendant signed an admission form that he used "meth" on September 23, 2025. |

**F.     Further Court Hearing**

On September 30, 2025, the parties returned to court, and defense counsel requested a one week continuance to allow her to discuss the recent allegations with the Defendant. *See* Mins., ECF No. 424. Without objection, the court continued the answering to October 7, 2025, and ordered that the Defendant be detained in light of the recent allegations.

**G.     Filing of Third Supplemental Declaration**

On October 6, 2025, the probation officer filed a Third Supplemental Declaration alleging that the lab results of a sweat patch worn by the Defendant September 15-22, 2025, were received and revealed the sweat patch was positive for methamphetamine. *See* ECF No. 425.

**H.     Admissions and Subsequent Court Hearings**

On October 7, 2025, the Defendant appeared in court and entered admissions to all the pending allegations. *See* Mins., ECF No. 426. The court set arguments on disposition for October 16, 2025, and ordered the Defendant to remain detained until said hearing.

On October 16, 2025, the parties presented their respective arguments on an appropriate sanction for the violations. *See* Mins., ECF No. 427. The court took the matter under advisement and ordered the Defendant to remain detained. Having reviewed the record herein and considered the parties' recommendations, the court now issues this Report and Recommendation.

## LEGAL STANDARD

The standard of proof for revocation of supervised release is governed by statute. A district court may revoke a term of supervised release only if it "finds by a preponderance of the evidence that the defendant violated a condition of supervised release." 18 U.S.C. § 3583(e)(3). *See also United States v. Lomayaoma*, 86 F.3d 142, 147 (9th Cir. 1996) ("for purposes of a supervised release revocation hearing, the district court need only conclude that a preponderance of the evidence supports" revocation). Revocation is mandatory if a defendant tests positive more than three times over the course of one year. *See* 18 U.S.C. § 3583(g)(4).

## PARTIES' RESPECTIVE POSITIONS AND FACTORS CONSIDERED

According to the Third Amended Violation Worksheet, the violations are Grade C violations, which carry the potential for 3-9 months of imprisonment under the sentencing guidelines, based on

the Defendant's criminal history category of I, followed by 34-40 months of supervised release. *See* 3rd Am. Violation Worksheet at ¶¶7-10 and 13, ECF No. 425-1.

Defendant's underlying offense of conviction was a Class A felony, so revocation could result in not more than five years of additional imprisonment. This is the Defendant's fifth revocation proceeding. For the first revocation on May 6, 2020, the Defendant received a sentence of time served (about one month and 18 days), followed by 58 months of supervised release. For the second revocation on May 20, 2021, the Defendant was sentenced to time served (about 91 days) and 56 months of supervised release. The third revocation was on April 27, 2023, where he received a sentence of five months' imprisonment and 49 months of supervised release. Finally, the Defendant's fourth revocation was on May 16, 2024, and he was sentenced to six months' imprisonment and 43 months of supervised release.

The probation officer recommended a sentence of nine months' imprisonment and 34 months of supervised release. He noted that the Defendant was afforded an opportunity to participate in the detox program and was also offered the chance to transition into the full residential treatment program, but the Defendant opted to leave. The Defendant was also offered the opportunity to participate in the DORE program, but he was later terminated after numerous violations. Although the Defendant has had his supervised release term terminated in the past, the probation officer stated that the Defendant never received a high-end sentence.

Counsel for the United States concurred in the probation officer's recommendation. He argued that the Defendant was sanctioned six different times while in the DORE program, but he had not learned from his past mistakes.

Defense counsel acknowledged that the Defendant has had numerous opportunities at treatment, yet he still wants treatment for his addiction. She agreed that the Defendant needs to be held accountable for his actions and asked that he be sentenced to five months' imprisonment and be ordered to participate in the six-month residential treatment program to help with his sobriety. She asserted that the Defendant really needs help and that a lengthy jail sanction will not allow him to receive the treatment he needs to deal with his addiction.

There is no question that the Defendant has a serious drug problem. The issue is whether the

Defendant is sincere when he asks for more treatment to overcome his addiction or whether he is making such claims in order to receive a more lenient sentence. The Defendant participated in the DORE program and received intensive outpatient treatment. Despite the various interventions by the DORE team and the sanctions he received, the Defendant continued to violate the DORE program requirements and his supervised release conditions. When afforded the opportunity for a slot in the residential treatment program, the Defendant declined. The court has also shown the Defendant leniency in the sentences imposed for past revocations, yet the Defendant continues to violate the conditions imposed by the court and has not learned from his past mistakes. The Defendant's actions reflect that he is not serious when he claims he wants more treatment. The Defendant has to be honest with himself and the court about whether he is ready to change his life and choose sobriety over addiction. Based on the record before it, the court recommends a sanction of eight months and hopes that a longer sentence will help the Defendant understand the gravity of his actions and the consequences of his decisions. The recommended sanction is reasonable to address the violations before the court and provides affords adequate deterrence for similar conduct in the future.

## RECOMMENDATION BY MAGISTRATE JUDGE

Having considered the above factors, the undersigned recommends the district judge accept the Defendant's admissions to violations noted above, revoke the Defendant's supervised release term and sentence him to eight months' imprisonment, with credit for time served,[3] followed by 35 months of supervised release.

///
///
///
///
///

---

[3] The Defendant has been detained since September 30, 2025, giving him 52 days of confinement credit as of the November 20th disposition hearing. This is separate and apart from the 34 days of jail sanctions he served for different DORE violations.

A disposition hearing shall be held on November 20, 2025, at 1:30 p.m., unless otherwise rescheduled by the Chief Judge.

IT IS SO RECOMMENDED.



/s/ Michael J. Bordallo
U.S. Magistrate Judge
Dated: Oct 27, 2025

**NOTICE**

**Failure to file written objections to this Report and Recommendation within fourteen (14) days from the date of its service shall bar an aggrieved party from attacking such Report and Recommendation before the assigned United States District Judge. 28 U.S.C. § 636(b)(1)(B).**